UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80722-CIV-MARRA

JOANN MANGANIELLO,

      Plaintiff,

vs.

THE TOWN OF JUPITER INLET
COLONY, a municipal corporation,
and DOUGLAS PIERSON, individually,

      Defendant.

_____/

## ORDER AND OPINION ON MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant Douglas Pierson's ("Pierson") Motion for Summary Judgment [DE 54] and Defendant Town of Jupiter Inlet Colony's ("Town") Motion for Summary Judgment [DE 57].  The Court has carefully considered the motions, responses, replies, entire court record, and is otherwise fully advised in the premises.

## I. INTRODUCTION

Joann Manganiello ("Plaintiff" or "Manganiello") was employed by the Defendant Town as the Town Administrator/Town Clerk from May 4, 2001, until she resigned on September 22, 2011.  In her Complaint [DE 1-2], Plaintiff brought the following Counts: (1) Violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 against both Defendants Town and Pierson (Count I); (2) Assault against Defendant Town (Count II); (3) Assault against Defendant Pierson (Count III); (4) Battery against Defendant Town (Count IV);[1] (5) Battery against Defendant Pierson (Count V);  (6) Invasion of Privacy by intrusion on physical solitude against

_____

[1] This Count has been dismissed by the Court without prejudice.  (*See* DE 39.)

Defendant Town (Count VI);[2] (7) Invasion of Privacy by intrusion on physical solitude against Defendant Pierson (Count VII);[3] and (8) Violation of the Florida Whistle-blower's Act (the "Whistle-blower's Act" or "Act"), Fla. Stat. § 112.3187, *et seq.,* against Defendant Town (Count VIII). Defendant Town and Defendant Pierson move for summary judgment as to all federal and state claims.

## II. UNDISPUTED MATERIAL FACTS[4]

1. The Town of Jupiter Inlet Colony is a small municipality located at the southern tip of Jupiter Island in Palm Beach County. Daniel Comerford, III ("Comerford") Aff., ¶ 5, DE 59-2.  The Town is a solely residential area consisting of approximately 235 single family homes. *Id.*

2. The Town is governed by a five member Commission, which includes a Mayor, Vice-Mayor, and three other Commissioners. Comerford Aff., ¶ 6.

3. The Town has traditionally employed one full-time, non-police employee: the Town Administrator/Town Clerk. Comerford Aff., ¶ 6.  On November 9, 2009, the Town added an administrative secretary. Manganiello Aff., ¶ 29.

4. Plaintiff Joan Manganiello is the former Town Administrator/Town Clerk of the Town. Manganiello Depo. at 4 -5, DE 63-3.  The Town hired Plaintiff in 2001. *Id.*  She resigned on September 22, 2011. *Id*. at 178.

5. The Town Hall/Administration Office is housed in a large one room office with desk dividers and a large conference table for Commission meetings. Compl., ¶ 9, DE 1-2.  A clerical assistant and the Chief of Police shared the space with Plaintiff. *Id.*

6. Each Commissioner has a mailbox at Town Hall. Benevento Sworn Statement at 5, DE 63-5.

---

[2] This Count has been voluntarily dismissed by Plaintiff. (*See* DE 38.)
[3] This Count has been voluntarily dismissed by Plaintiff. *Id.*
[4] The facts that follow are only those facts relevant and material to the Court's disposition of Count I because Plaintiff's remaining state and common law claims will be dismissed without prejudice.

7.  Defendant Douglas Pierson was elected as a Town Commissioner in February 2003. Manganiello Depo. at 23.

8.  Pierson was a seasonal resident of the Town. Manganiello Depo. at 40.  Each year he spends October to May in Florida. *Id.* at *14.*  The other four months of the year he resides in Vermont. *Id.*

9.   Between 2003 and 2006, when Pierson was in town, he would come to the Town Hall/Office once or more each week to check his mail. *Id.*

10. From 2003 to 2006, when Pierson came into Town Hall he greeted Plaintiff by touching her on the hand or arm, taking her hand, or kissing her on the check, and saying "hello." Manganiello Depo. at 31-33.

11. In February 2006, Pierson was appointed Building and Zoning Commissioner, and as such, Pierson and Plaintiff interacted more frequently. Manganiello Depo. at 39.

12. From 2006 to 2011, Pierson came into Town Hall on a nearly daily basis when he was in town, often late in the day while he walked his dog. Manganiello Aff., ¶ 9.

13. "Virtually" every time Pierson came into the Town Hall and Plaintiff was approachable, he would greet her in some way, even if he just grabbed or patted her hand. Compl., ¶ 21, Manganiello Depo. at 31-22, Manganiello Aff. ¶¶ 9, 11.

14. In 2006, Pierson began to sometimes hug Plaintiff when he greeted her. Compl. ¶ 17.

15. Beginning in 2006, Pierson addressed Plaintiff as "the lovely madam clerk," "lovely lady," "love," and "my dear." Manganiello Depo. at 54.

16. Pierson also complimented Plaintiff by saying, "you look lovely as always." Manganiello Depo. at 54.

17. On occasion, Plaintiff and Pierson sat side-by-side to review building plans at the conference table in Town Hall. Manganiello Depo. at 49.  According to Plaintiff, Pierson would sit so close to her she could feel his breathing, and sometimes his leg or knee brushed her leg. *Id.* Plaintiff estimated this occurred between ten and 20 times from 2006 through 2011. *Id.*, Manganiello Aff., ¶12.  Plaintiff said when she felt Pierson was too close, she would move her leg and shift her chair away. *Id.*, ¶ 10.

18. On two occasions when Plaintiff was wearing "pressed, new, neat, long" blue jeans and boots with heels, Pierson complimented her appearance by saying "you look fine in those jeans" and "looking mighty fine in those boots." Manganiello Depo. at 55-56.

19. On January 29, 2007, when Pierson approached Plaintiff to greet her she told Pierson, "please stop touching me." Manganiello Depo. at 36, 64-65, Manganiello Aff., ¶ 17.

20. Sometime in 2009, Pierson greeted Manganiello with a hug and a kiss on the check in the presence of a Town police officer. Manganiello Depo. at 65.

21. Once at a Town Commission meeting when Pierson came into the meeting room and took his seat, he reached beyond the person sitting next to him and touched Plaintiff on the shoulder or arm. Manganiello Depo. at 69-70.

22. On April 21, 2010, after Plaintiff got a new haircut, Pierson reached toward Plaintiff's head and ran his fingers through her hair one time. Manganiello Depo. at 65.

23. Subsequent to April 2010, Pierson's greetings consisted of him only reaching out to touch or stroke Plaintiff's hands. Manganiello Aff., ¶ 25.

24. While Plaintiff found Pierson's touching unwelcomed and offensive, she acknowledges Pierson never physically threatened her, never engaged in any inappropriate sexual

conversation, and never engaged in any sexually humiliating conduct. Manganiello Depo. at 185.

25. Daniel Comerford, III, who served as a Town Commissioner since 2004, was appointed Vice Mayor in February 2009. Comerford Depo. at 7-8, DE 63-9.  Once Comerford became Vice Mayor, he was commonly present during normal business hours in Town Hall. *Id*.

26. From February 2009 through September 2011, Comerford observed Plaintiff as she performed her duties as Town Administrator/Town Clerk because her work station was close to his. Comerford Aff., ¶ 9.

27. In February 2011, the Town elected Comerford to serve as Mayor. Comerford Aff., ¶ 2.

28. Pursuant to the Town's Code, the Mayor is the "chief executive officer" of the Town and it is his duty to attend to the proper and effective enforcement of the laws and ordinances of the Town. Comerford Aff., ¶ 7.  The Code requires the Mayor to prepare a comprehensive and detailed budget for the ensuing fiscal year each August. *Id*.

29. In July 2011, Comerford prepared his first budget as Mayor. Comerford Depo. at 34.  Early in the process Comerford sought the Town residents' input on the proposed budget. *Id*. at 43-44.

30. Mayor Comerford received 30 responses from residents regarding their input on the proposed budget. Comerford Depo. at 44.

31. Pierson, as well as several other residents, proposed that Plaintiff's salary be reduced. Manganiello Depo. at 72, Comerford Aff., Ex. A.

32. In July 2011, as part of the proposed budget, Comerford reduced Plaintiff's salary from $82,000 to $50,000. Manganiello Depo. at 223.

33. On September 2, 2011, Plaintiff provided the Commission with a written letter claiming Pierson had sexually harassed her. Manganiello Depo. at 224.  The letter also alleged Pierson performed a renovation of Town Hall without commission approval. *Id.* at 204-206.  Plaintiff asserts that her September 2, 2011 letter constitutes whistle-blowing. *Id.*

34. Upon the Commission's September 22, 2011 approval of Comerford's budget, Plaintiff resigned. Manganiello Depo. at 178.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.  If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249.

## IV. DISCUSSION

### A.  Count I: §1983 Claim Against Pierson

In Count I of the Complaint, Plaintiff brings a claim under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment against Pierson.  42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

Plaintiff alleges that her right to equal protection under the Fourteenth Amendment was violated by Defendant Pierson when he sexually harassed from 2003 to 2011.

### 1.  Elements of Hostile Work Environment Sexual Harassment

The Eleventh Circuit Court of Appeals has recognized a constitutional right, arising under the Equal Protection Clause, to be free from being subjected to a hostile work environment in public employment.  *See Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991); *Cross v. State Dep't of Mental Health*, 49 F.3d 1490, 1507 (11th Cir. 1995).  The elements of a hostile work environment claim under the Equal Protection Clause are generally the same as the elements of a similar claim under Title VII, 42 U.S.C. 2000e-2 *et seq.; Busby*, 931 F.2d at 777; *Cross*, 49 F.3d 1508.  Under Eleventh Circuit precedent, a plaintiff must show that she: (1) is a member of a protected group; (2) was subjected to unwelcome sexual harassment; (3) the harassment was based on gender; and (4) the harassment was so severe or pervasive as to alter the conditions of her employment. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 577 (11th Cir.

2000).  "The prima facie showing in a hostile work environment case is likely to consist of evidence of many or very few acts or statements … which, taken together, constitute harassment." *Vance v. So. Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1510-11 (11th Cir. 1989), *overruled on other grounds, Harris v. Forklight Systems. Inc.,* 510 U.S. 17, 22 (1993).  There is "not simply some magic number" of incidents that preclude summary judgment, rather "it is repeated incidents of harassment that continue despite the employee's objections [that] are indicative of a hostile work environment." *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1276 (11th Cir. 2002).

### a.  Establishing Severe or Pervasive Harassment

In his case, Defendants move for summary judgment on Plaintiff's hostile work environment claim solely on the basis that Plaintiff has not produced sufficient evidence to satisfy the fourth element listed above.  The severe or pervasive element asks whether the conduct complained of was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Gupta,* 212 F.3d at 583.  This element has both an objective component and a subjective component. *Mendoza,* 195 F.3d at 1246.  To be actionable, allegedly harassing behavior must be one that "a reasonable person would find hostile or abusive" and that Plaintiff subjectively perceives to be "abusive." *Id.*  For the purpose of this Order, the Court accepts Plaintiff's claim that she subjectively perceived Pierson's condut to be severe and pervasive, however, she has not presented any argument or evidence that such conduct altered a term or condition of her employment.  The critical inquiry, therefore, is whether a reasonable person in Plaintiff's position would find the alleged harassment sufficiently severe or pervasive to create a hostile or abusive work environment.

The Eleventh Circuit has identified the following four factors that should be considered in determining whether the complained of conduct is sufficiently severe and pervasive from an objective standpoint to alter an employee's terms or conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza,* 195 F.3d at 1246.  The Court considers each of these factors, not in isolation, but under the totality of the circumstances, to determine if the alleged harassment is actionable. *Id.*

### i.   Frequency

First, the Court considers the frequency of the alleged conduct.  The allegation of the most frequent physical contact in this case is very broad.  Plaintiff alleges that every time Pierson came into Town Hall, he tried to greet her by either touching her hand or arm, taking her hand, hugging her or kissing her on the cheek, and saying "hello."[5] Compl., ¶¶ 11-17.  When asked during her deposition, Plaintiff could not put a number on the times Pierson greeted her in a way she found offensive. Manganiello Depo. at 33.  All she could say is that "virtually" every time he came into the Town Hall and she was approachable, he would greet her in some way. *Id.*, Manganiello Aff., ¶¶ 9, 11.

Construing the evidence in the light most favorable to Plaintiff, the Court considers how many times Pierson could have possibly greeted Plaintiff when he came into Town Hall.  Based on Plaintiff's deposition testimony, from 2003 to 2006 Pierson, at most, came into Town Hall once a week during the eight months he was in town.[6] Manganiello Depo. at 40.  On those visits,

---

[5] According to the Complaint, Pierson did not begin to hug Plaintiff when he greeted her until 2006. Compl., ¶17.
[6] According to Plaintiff, the "seasonality" or the frequency of Pierson's Town Hall visits does not change the facts or how she felt regarding his conduct. Pl.'s Statement of Disputed and Undisputed Facts, ¶ 8, DE 63-1; Manganiello Aff., ¶ 11.

Pierson either touched Plaintiff's hand or arm, took her hand, or kissed her on the cheek and said "hello" when he greeted her. *Id.* According to Plaintiff, Pierson did not begin to sometimes hug her when he greeted her until 2006. Compl., ¶ 17.  From 2006 to 2011, Plaintiff avers that Pierson came into Town Hall on a nearly daily basis and when she was approachable, he would greet her in some way. Manganiello Aff., ¶ 9.  Subsequent to April 2010, Pierson only greeted Plaintiff by reaching out to touch or stroke her hands. *Id.*, ¶ 25.

According to Plaintiff, each and every one of Pierson's greetings was offensive, even when he just grabbed or patted her hand. Compl., ¶ 21.  Plaintiff asserts that every time Pierson greeted her, "she was subjected to his unwelcomed, unwanted, and inappropriate assaultive behavior." Pl.'s Statement of Disputed and Undisputed Facts, ¶ 8.  Plaintiff states in her Affidavit that she objected many more than four times to Pierson's greetings. Manganiello Aff., ¶ 10.  She said sometimes her objections were verbal, and sometimes they were through her body language and actions in response to Pierson's approach. *Id.*  Plaintiff, however, can recall only two instances when she specifically rejected Pierson's greeting over the eight year period.[7] Manganiello Aff. ¶¶ 5, 17.

Plaintiff's next most frequent allegation of physical contact occurred between ten and 20 times from 2006 to 2011.[8]  Plaintiff alleges that Pierson sat so close to her when they reviewed building plans together that she could feel his breathing and there were times when his leg or knee brushed her leg.[9] Manganiello Depo. at 49.  Plaintiff was unable to recall any specific details regarding these allegedly offensive interactions. *Id.* at 50.  Plaintiff could not remember

---

[7] In December 2003, Pierson came into the office and approached Plaintiff to greet her. Manganiello Aff. ¶5.  She stepped back from him and asked him to stop greeting her every time he came in. *Id.*  On January 29, 2007, Pierson approached Plaintiff to greet her and she stepped back from him and asked him to stop. *Id.*, ¶ 17.
[8] When asked during her deposition how frequently such alleged conduct took place, Plaintiff was only able to provide an estimate. Manganiello Depo. at 49, Manganiello Aff., ¶ 12.
[9] Pierson's appointment to Building and Zoning Commissioner in 2006 required Pierson and Plaintiff to interact more frequently, such as to sit side-by-side and review building plans. Manganiello Depo. at 39, 49.

any specific date, or any specific set of plans being reviewed, when it allegedly occurred. *Id.* Plaintiff did say that when she felt Pierson was too close, she would move her leg and shift her chair away. Manganiello Aff., ¶ 10.

Additionally, Plaintiff alleges that one time after Plaintiff got a new haircut and was wearing a different hairstyle, Pierson walked up to her and ran his fingers through her hair. Manganiello Depo. at 180-181.  When asked during her deposition how long this conduct lasted, Plaintiff responded "as long as it takes someone to run your fingers through somebodies hair." *Id*.  It is uncontested that Pierson stroked her hair no more than once. *Id.*

As far as verbal conduct, it is uncontroverted that beginning in 2006 Pierson addressed Plaintiff as "the lovely madam clerk," "lovely lady," "love," and "my dear." *Id*. at 54, Manganiello Aff., ¶ 13.  Specifically, Plaintiff points to an email from Pierson in 2006 regarding Town business wherein the first line begins, "bless you lovely lady." Pierson Depo. at 24, DE 63-12, Pl.'s Ex. 2, DE 63-12.  Similarly, in another letter regarding Town business from Pierson in 2006, he addressed Plaintiff as "Lovely Town Clerk." *Id.*

It was also established that Pierson occasionally complimented Plaintiff's appearance when he said, "you look lovely as always." Manganiello Depo. at 54.  On two specific occasions when Plaintiff was wearing "pressed, new, neat, long" blue jeans and boots with heels, Pierson complimented her by saying "you look fine in those jeans" and "looking mighty fine in those boots." *Id*. at 55-56.  Pierson also once made the following comments about residents and his tennis partner, "she's a real cutie," "she keeps herself in real good shape," and "there was a really attractive lady (new resident) in a short skirt taking pictures at the Town block party." *Id.* at 58-62.  Plaintiff said Pierson's compliments offended her because they were "lecherous" and "not meant to be complimentary in the true meaning of the word." Manganiello Aff., ¶ 15.

To the extent that Plaintiff alleges Pierson's conduct permeated the workplace,[10] and because Defendants do not contest the frequency of Pierson's conduct, the Court will consider the frequency factor as weighing in favor of Plaintiff's claim.  Defendants assert, however, that Plaintiff does not meet the final three factors.  The Eleventh Circuit has set a high standard for Plaintiff to meet to show Pierson's conduct was objectively severe or pervasive under the second, third, and fourth factors.

### ii.    Severity

The second factor the Court considers is the severity of the conduct.  While Plaintiff acknowledges Pierson's conduct could be considered on the low end of severity, she argues it still satisfies the objectively severe and pervasive requirement. Pl.'s Resp. at 4, DE 63.  The Eleventh Circuit, however, has delineated a minimum level of severity necessary for harassing conduct to constitute discrimination, and the bar is quite high.  To determine if Pierson's conduct rises to the level of severe or pervasive harassment in the Eleventh Circuit, it is instructive to survey cases that have been found actionable and those found not actionable as a matter of law. In the following three cases, the conduct was found not to rise to a level of actionable sexual harassment:

In *Gupta*, plaintiff alleged her harasser "put his hand on my right thigh" with part of his hand on the inside of her thigh and on another occasion, lifted the hem of her dress about four inches with his hand. *Gupta,* 212 F.3d at 579.  One time, Plaintiff found him sitting in his office with just an undershirt on. *Id*. at 585.  When she entered his office, he grabbed his dress shirt, "unbuckled his pants and pulled down his zipper and start[ed] tucking his shirt in." *Id*.  He also

---

[10] Based on Plaintiff's affidavit, from April 2010 through the end of Plaintiff's employment with the town, any instances of physical interaction between Plaintiff and Pierson for the most part stopped. Manganiello Aff. ¶ 25. Subsequent to April of 2010, the only contact Plaintiff alleges is that Pierson touched her hand when he greeted her at Town Hall. *Id.*  Plaintiff did not come forward about the alleged sexual harassment until August 2011, when she received an adverse salary reduction.

frequently called plaintiff's house late at night asking personal questions. *Id*. at 579.  One morning after a bad thunderstorm the night before, he called plaintiff and asked if she needed a ride to a University seminar. *Id*.  During that conversation, he said, "Oh, you were all by yourself on a dark and stormy night? Why didn't you call me? I would have come and spend [sic] the night with you." *Id*.  Twice he told her, "Indian people are really decent, and the Caribbean and Western people are really promiscuous.  I can look at you and I can tell you are innocent and you don't have much experience." *Id*.  The Eleventh Circuit held that this evidence did not support a finding that, from an objective viewpoint, the harassment was so severe, or pervasive to constitute actionable sexual harassment. *Id.* at 586.  The court found plaintiff failed to present any evidence that defendant's conduct was in any way "physically threatening or humiliating," or that a reasonable person would view the conduct as severe. *Id.*

In *Mendoza,* the plaintiff alleged her supervisor constantly stared at her, followed her around, and looked her up and down in a very obvious fashion. *Mendoza,* 195 F.3d at 1238.  On two occasions he stared at her groin area and made a sniffing motion. *Id.*  On one occasion he rubbed his right hip against hers while touching her shoulder and smiling. *Id.*  On another occasion he said to plaintiff, "I'm getting fired up." *Id.*  The Eleventh Circuit concluded the district court did not err in granting defendant judgment as a matter of law because the alleged conduct was insufficient to sustain a claim for sexual harassment. *Id.* at 1253.  The court relied on existing case law to highlight the insufficiency of plaintiff's evidence as conduct much more severe and pervasive than the conduct alleged by plaintiff had been found insufficient as a matter of law.[11] *Id.* at 1252.

---

[11] The *Mendoza* court offered the following examples of cases where circuit courts had rejected sexual-harassment claims based on conduct that was as serious or more serious than the conduct at issue in that case: *Shepherd v. Comptroller of Public Accounts of Texas,* 168 F.3d 871, 872–75 (5th Cir.1999) (holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," another comment that

In *Mitchell v. Pope,* plaintiff alleged the harasser tried to kiss her after a Christmas party and called her a "frigid bitch" when she refused. 189 F. App'x 911, n.3 (11th Cir. 2006).  He made comments to plaintiff such as "you must be working out," "you sure do look fine," and "your ass sure does look fine." *Id.*  He told her she could "just walk into the room and [he would get] an erection." *Id.*  He showed up on numerous occasions in her driveway, once drunk, telling

---

plaintiff had big thighs, touching plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient to support hostile-environment claim); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264–67 (5th Cir.1999) (noting it was "dubious" whether several sexually oriented comments and gestures and an implied threat of retaliation for refusing a sexual advance would be sufficient to establish a hostile environment); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2nd Cir.1998) (holding that statement that plaintiff had the "sleekest ass" in office plus single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand" were insufficient to alter the terms or conditions of the plaintiff's employment); *Adusumilli v. City of Chicago,* 164 F.3d 353, 357 (7th Cir.1998) (holding actions insufficient to support hostile environment claim where co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks); *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355,1365–66 (10th Cir.1997) (holding five "sexually-oriented, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well, you got to get it when you can"); *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167–68 (7th Cir.1996) (holding offensive comments including repeatedly calling the plaintiff a "sick bitch" insufficient under Harris because not necessarily gender-related); *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 753–54 (4th Cir.1996) (holding evidence that the harasser "bumped into [the plaintiff], positioned a magnifying glass over [the plaintiff's] crotch, flipped his tie over to see its label, gave him a congratulatory kiss in the receiving line at [a] wedding, and stared at him in the bathroom" insufficient to establish violation of Title VII); *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 823–24(6th Cir.1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a four-month period involved repeated sexual jokes; one occasion of looking plaintiff up and down, smiling and stating, there's "Nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks"; asking plaintiff, "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stating, "Just get the broad to sign it"; telling plaintiff she was "paid great money for a woman"; laughing when plaintiff mentioned the name of Dr. Paul Busam, apparently pronounced as "bosom"); *Baskerville v. Culligan Intl. Co.,* 50 F.3d 428, 430 (7th Cir.1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation); *Kidwai v. McDonald's Corp.,* No. 93–1720, 1994 WL 136971 (4th Cir.1994) (holding insufficient under Harris seven incidents, including one instance in which harasser asked plaintiff whether "she was in bed with someone"); *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993) (holding plaintiff's claims-supervisor repeatedly asked about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and tried to kiss her once at a bar and twice at work-were not sufficient for actionable sexual harassment); see also *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995) ("A hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace."); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 263 (5th Cir.1999) ("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment."). *Mendoza,* 195 F.3d at 1246–47.

her he loved her. *Id.*  He attempted to look down her shirt, rubbed up against her, chased her around the office and once picked her up. *Id.*  He asked her when he called her at home if she was dressed or naked. *Id.*  He opened the women's bathroom door and turned the lights off when he knew plaintiff was inside. *Id.*  He asked plaintiff to go to a hotel hot tub with him when they were at a conference and called her a "frigid bitch" when she refused. *Id.*  The Eleventh Circuit affirmed summary judgment finding that even these cumulative acts did not rise to actionable conduct because this behavior is not the kind of "severe" harassment necessary for liability to attach. *Id.* at 914.

On the actionable side of the line are *Dees v. Johnson Controls World Serv., Inc.,* 168 F.3d 417, 418, 422 n.12 (11th Cir. 1999), *Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F. 3d 501 (11th Cir. 2000), and *Husley v. Pride Restaurants*, 367 F.3d 1238, 1248 (11th Cir. 2004).  In these cases, the Eleventh Circuit found the conduct sufficiently severe or pervasive to rise to a level of actionable harassment.

In *Dees,* actions of the Fire Chief and Assistant Chief and two other supervisory personnel toward plaintiff on a daily basis over about a three year period took a variety of forms. *Dees*, 168 F.3d at 418.  These men told sexually explicit stories and jokes in the plaintiff's presence, made comments to her about her body, and physically harassed her. *Id.* at 419.  On one particularly humiliating occasion, the Chief asked plaintiff to sit on his lap. *Id.*  When she refused, he picked her up and squeezed her so hard that she urinated in her pants. *Id.* The Chief, laughing, then told the other firefighters what had happened. *Id.*  On another occasion, the Assistant Chief ground his groin into plaintiff's buttocks after stating "look at that sexy mama, I could just eat you in that skirt." *Id.*  He also propositioned plaintiff on a number of occasions, whispering in her ear that she was "the kind of woman I like; you're not only beautiful, you're

hot-blooded," or telling her that she needed a "sugar daddy" and that with a body like hers, she would not have to work if she listened to him. *Id.* On numerous other instances, the four men grabbed or slapped plaintiff's buttocks, groped her leg, or otherwise touched her in a sexually suggestive manner. *Id.*

In *Johnson,* the Court found a male co-worker's conduct to be "severe" toward the female plaintiff. *Johnson,* 234 F. 3d at 509. He gave her unwanted massages, stood so close to her that his body parts touched her from behind, called out plaintiff's name and pulled his pants up in an obscene manner so plaintiff could see the imprint of his private parts, he repeatedly told plaintiff she had a sexy voice, he commented about sex to plaintiff and asked her about her sex life. *Id.* The Court reasoned the facts differed from cases like *Mendoza* and *Gupta*, where there were fewer instances of less objectionable conduct over longer periods of time. *Id.* at 509; *see Mendoza,* 195 F.3d at 1242-43; *see Gupta*, 212 F.3d at 585. The Court found the facts more akin to the "continuous barrage of sexual harassment" in *Dees. Johnson,* 234 F.3d at 509; *see Dees,* 168 F.3d at 418.

In *Husley,* the Court found a male co-worker's conduct toward the female plaintiff to be sufficiently severe to survive summary judgment. *Husley,* 367 F.3d at 1247. The harassment involved "many direct as well as indirect propositions for sex." *Id.* at 1248. On two occasions the male coworker approached plaintiff from behind while she was sweeping or mopping and tried to touch her breasts by reaching over her shoulder and putting his hand down the top of her shirt. *Id.* at 1241. Once or twice, the same coworker followed Plaintiff into a stall in the women's restroom. *Id.* Another time, he enlisted the assistance of others to hold her while he attempted to grope her. *Id.* Twice he tried to pull her pants down and two other occasions he tried to put his hands down the front of her pants. *Id.* One time, he told plaintiff that, "the only

way you can go on break is if I get into your pants after work." *Id.* at 1242.  The Court found the conduct was at least as severe or pervasive as the conduct in *Johnson,* which the court found bad enough to satisfy the objectively severe and pervasive standard. *Husley, F.3d.* at 1248; *see Johnson,* 234 F. 3d at 506, 509.

When considering the totality of the circumstances, the Court deems that this case falls more in line with the Eleventh Circuit's decisions in *Gupta*, *Mendoza* , and *Mitchell* rather than *Dees, Johnson*, *or Husley*.  While Plaintiff may have found the conduct subjectively offensive, the greetings, compliments and interactions in the manner described by Plaintiff fall below the minimum level of severity needed to establish sexual harassment.  Here, the instances of physical contact were only momentary and were not coupled with any sexually suggestive comments or innuendos. *See Gupta,* 212 F.3d at 585.  None of the conduct alleged by Plaintiff was overtly sexual or sexually offensive.  The verbal conduct consisted of only generalized comments and compliments.[12] *Id.* at 584.  Pierson did not make any derogatory or degrading remarks to Plaintiff.  Given normal office interaction among employees, the manner in which Pierson interacted with Plaintiff does not support the conclusion that Pierson's conduct constitutes objectively severe harassment.[13]

### iii.    Physically Threatening or Humiliating

---

[12] The law in the Eleventh Circuit establishes that a man can complement a woman's looks (or a woman compliment a man's looks) on one or several occasions, by telling she is looking "very beautiful," or words to that effect, without fear of being found guilty of sexual harassment for having done so. *Gupta,* 212 F.3d at 584.  Not uncommonly, words complimenting appearance may show a flirtatious purpose, but flirtation is not sexual harassment. *Id.* (*citing Oncale v. Sundowner Offshore Servs. Inc.,* 523 U.S. 75, 81 (1998) (explaining that intersexual flirtation is part of ordinary socializing in the workplace and should not be mistaken for discriminatory "conditions of employment").

[13] Plaintiff owns testimony sheds light on the fact that Plaintiff's subjective beliefs that Pierson's conduct constituted severe harassment are not objectively reasonable.  In Plaintiff's deposition, she stated that other male visitors greeted her in the same manner at Town Hall and she did not consider these greetings offensive. Manganiello Depo. at 29–30.  Plaintiff stated that both Alfred Sinai and Jack Homiman greeted her the same way as Pierson did when they came into Town Hall. Manganiello Depo. at 29–30.  When asked if Plaintiff was offended when Mr. Sinai or Mr. Homiman greeted her that way, she responded "not at all." *Id.* at 30.  Similarly, Plaintiff stated she found Pierson's compliments inappropriate solely because they came from him and she conceded she would not have been offended if someone else had said them.  Manganiello Depo. at 58.

The third factor the Court considers is whether the conduct was physically threatening or humiliating. In her Complaint, Plaintiff alleges Pierson's conduct embarrassed and threatened her, and injured her self-esteem, however, she did not provide any explanation or evidence to support these allegations. During Plaintiff's deposition, she even acknowledged Pierson never physically threatened her and never engaged in any inappropriate sexual conversation or any sexually humiliating conduct. Manganiello Depo. at 185. Because the objective component is judged from the perspective of a reasonable person in plaintiff's position considering all the circumstances, the Court concludes, as a matter of law, that regardless of Plaintiff's subjective feelings, none of the alleged conduct could reasonably be considered physically threatening or humiliating.

### iv.   Unreasonable Interference with Job Performance

The fourth and final factor the Court considers is whether the conduct unreasonably interfered with Plaintiff's job performance. An abusive work environment can "detract from an employee's job performance, discourage employees from remaining on the job, or keep them from advancing their careers." *Harris,* 510 U.S. at 22. This factor is glaringly absent. In the Complaint, Plaintiff states that Pierson's behavior significantly interfered with her ability to do her job and caused her to experience depression, anxiety, fear, emotional distress and made continuing to work at the Town an oppressive burden. Compl., ¶ 29. Plaintiff, however, presents no argument or evidence to support this allegation that Pierson's conduct unreasonably interfered with her job performance. To the contrary, Plaintiff stated during her deposition that she believed she had been doing well at work, received multiple pay raises, and had not had any work performance issues prior to her salary reduction in 2011. Manganiello Depo. at 116-17. The Court concludes, as a matter of law, that there is nothing in the record that indicates

Pierson's conduct interfered with Plaintiff's job performance.  Therefore, three out of the four factors the court is to consider when deciding whether the alleged harassment is objectively severe or pervasive enough to alter Plaintiff's terms and conditions of employment are not present in this case in any form.[14]

### 2.   Conclusion on Hostile Work Environment Sexual Harassment

While it is not the Court's intent to condone or trivialize Pierson's behavior, the Court must take an objective view as to whether these acts cross the line into the realm of actionable sexual harassment pursuant to the Eleventh Circuit's articulated standards.  Under prevailing precedent in this circuit, Pierson's conduct simply does not rise to the severity level determined actionable by *Mendoza* and cases like *Mendoza*. *Mendoza*, 195 F.3d at 1248.  Considering the acts "in context, not as isolated acts," the Court concludes, as a matter of law, that in their totality, the alleged incidents do not meet the threshold established by the Eleventh Circuit to survive summary judgment. *Id.* at 1246. To the extent Plaintiff showed frequent conduct, the frequency of it does not compensate for the absence of the other factors. *Id.* at 1248.  The whole of all the conduct Plaintiff described is insufficient to create a genuine issue of material fact as to whether the alleged harassment constituted actionable sexual harassment.

In a case like this the Court reaffirms the bedrock principle that not all objectionable conduct or language amounts to sexual harassment. *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 809 (11th Cir. 2010) (recognizing Title VII is "neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace").  It is well settled in this circuit that not all allegedly derogatory or harassing behavior constitutes actionable sexual

---

[14] The *Mendoza* Court indicated that the "first and most important[] factors for the Court to consider are whether the alleged conduct was "physically threatening or humiliating" and whether the cumulative effect of the conduct "unreasonably interfered" with Plaintiff's job performance. 195 F.3d at 1248.  There is no record evidence from which a reasonable trier of fact could conclude that Pierson's conduct was in any way "physically threatening or humiliating" or "unreasonably interfered" with Plaintiff's job performance.

harassment. *See Gillis v. Georgia Dept. of Corrections,* 400 F.3d 883, 888 (11th Cir. 2005). The Eleventh Circuit has affirmed summary judgment in favor of defendants based upon conduct much more severe and pervasive than the conduct Plaintiff alleged in this case. Plaintiff's facts do not establish a prima facie case of sexual harassment. In sum, the undisputed material facts show Plaintiff's workplace was not abusive as a matter of law. Accordingly, Defendant Pierson's motion for summary judgment is **GRANTED** on Plaintiff's § 1983 claim.[15]

### B.  Count I: §1983 Claim Against Town

Count I of the Complaint also alleges that Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 were violated when the Town maintained an informal policy and custom of discrimination against females solely on the basis of their gender.

In order to establish liability under §1983 against a municipality, Plaintiff must adequately allege an official policy or custom by which the constitutional deprivation was inflicted. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978); *see also Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) ("the plaintiff [must show] that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation"); *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997) ("the requirement of a municipal policy or custom constitutes an essential element of a § 1983 claim that a plaintiff must prove in order to establish municipal liability").

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.* (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)). "A custom

---

[15] The Eleventh Circuit has expressly rejected the contention that summary judgment should seldom be used in employment discrimination cases because such cases "involve examination of motivation and intent." *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Chapman v. AI Transport,* 229 F.3d 1012,1026 (11th Cir. 2000) (en banc)). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Id.*

is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 436 U.S. at 690-91). The Eleventh Circuit has held that a "municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987)).

Plaintiff's allegations that Pierson sexually harassed her serve as the underlying basis for Plaintiff's § 1983 claim against the Town. To support this claim, Plaintiff alleges Pierson's persistent harassment of female employees constitutes the informal policy and custom of discrimination against females, solely based upon their gender. [16] Specifically Plaintiff alleges Pierson touched or hugged in sexually suggestive ways and made suggestive comments on her physical appearance. Plaintiff claims Mayor Zuccarelli, Mayor Comerford, and the other Commissioners knew she was being harassed because she allegedly complained to them, yet they failed to take remedial action. The Town's purported tolerance of Pierson's conduct and its failure to take remedial action despite actual and constructive knowledge allegedly constitute a "moving force" behind the sexual harassment experienced by Plaintiff.

In this case, the Court has already determined the undisputed material facts show Plaintiff's workplace was not abusive as a matter of law. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes Plaintiff failed, as a matter of law, to establish a prima facie case of sexual harassment against Pierson. Thus, the allegations of Pierson's purported sexual harassment that serve as the underlying basis for Plaintiff's § 1983 claim against the Town cannot amount to a constitutional violation. Therefore, the Town cannot be found liable under § 1983 because an Equal Protection Clause violation did not occur. Accordingly,

---

[16] Plaintiff does not produce any evidence to show Pierson purportedly sexually harassed any other females.

Defendant Town's Motion for Summary Judgment is **GRANTED** on Plaintiff's § 1983 (Count I) claim.

### C.  State Law Claims

Because Plaintiff no longer has a live federal claim against Defendants, the remaining potential state and common law claims will be dismissed.   The Court declines to exercise supplement jurisdiction over these claims.   The Court derives its authority to decide Plaintiff's federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.   Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction…." *Id.* § 1367(c)(3).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists.  *Nolin v. Isbell,* 207 F.3d 1253, 1258 (11th Cir. 2000); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the ... defendants, the district court correctly dismissed its remaining state law claims against these defendants."); *Rice v. Branigar Org., Inc.,* 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that the trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Since the Court has determined the federal claim serving as the basis for original federal court jurisdiction fails as a matter of law, the Court also concludes any potential state and common law claims should be dismissed without prejudice so that Plaintiff may, if she chooses, pursue them in state court.

## IV. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that Defendant Pierson's Motion for Summary Judgment [DE 54] is **GRANTED** as to Plaintiff's federal claim (Count I) and Defendant Town's Motion for Summary Judgment [DE 57] is **GRANTED** as to Plaintiff's federal claim (Count I). Any claims based on state or common law (Count II, III, V, and VIII) are **dismissed without prejudice**.  Judgment will be entered by a separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of December, 2013.

KENNETH A. MARRA
United States District Judge